1    James Alan Bush
     1745 De Marietta Avenue #3
2    San Jose, CA 95126
     (408) 982-3272
3
     Plaintiff in pro per
4

FILED

2008 MAR 10 P 2:54

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

5

6

7

8                     UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                          SAN JOSE DIVISION

11
                                              C08    01354
12    JAMES ALAN BUSH,                    )   Case No. _____
                                          )
13                            Plaintiff,  )   DRAFT COMPLAINT
                                          )
14    v.                                  )   DEMAND FOR JURY TRIAL
                                          )
15    SUNNYVALE DEPARTMENT OF             )
      PUBLIC SAFETY, ET AL,               )
16                                        )
                              Defendants. )
17    _____)

18

19                         PRELIMINARY STATEMENT

20        Plaintiff brings this suit pursuant to Title 42 United States Code § 1983 (The Federal

21    Civil Rights Act), for violations of certain protections guaranteed to him by the Fourteenth

22    Amendment of the Federal Constitution, by Defendants, Judge Jean High Wetenkamp, Judge

23    Thomas Hastings, and Judge Thomas Hayden, under color of law, each in their capacity as a

1      judge in the Superior Court of California, Santa Clara County; and, Plaintiff brings this suit

2      pursuant to Title 42 United States Code § 1983, for violations of certain protections guaranteed

3      to him by the First, Fourth, Fifth and Fourteenth Amendments of the Federal Constitution, by

4      Defendants, Officer Robin Smith, Officer Devon Klein, and other yet unnamed officers, who

5      are police officers of the Sunnyvale Department of Public Safety, and the City of Sunnyvale;

6      yet unnamed police officers of the Santa Clara Police Department, and the City of Santa Clara;

7      yet unnamed police officers of the Campbell Police Department, and the City of Campbell; yet

8      unnamed police officers of the Mountain View Police Department, City of Mountain View;

9      and, yet unnamed police officers for the San Jose Police Department, and the City of San

10      Jose, for committing acts, under color of law, which deprived Plaintiff of rights secured under

11      the Constitution and laws of the United States; and for refusing or neglecting to prevent such

12      deprivations and denials to Plaintiff; and, Plaintiff brings this suit pursuant to Title 42 United

13      States Code § 1983 (conspiracy to violate Plaintiff's civil rights), Title 42 United States Code §

14      1985 (civil conspiracy; obstruction of justice), and Title 18 United States Code § 4 (misprision

15      of felony), by all remaining defendants for committing acts, in their individual capacity and in

16      concert with state actors (e.g., under color of law), which deprived Plaintiff of rights secured

17      under the Constitution and laws of the United States.

18

19      **PARTIES**

20      1. Plaintiff, James Alan Bush, residing at 1745 De Marietta Avenue #3, City of San Jose, County

21          of Santa Clara, State of California;

22      2. Defendant, Sunnyvale Department of Public Safety, an agency of the United States

23          Government, operating from 700 All America Way, City of Sunnyvale, County of Santa

1     Clara, State of California;

2    3. Defendant, Campbell Police Department, an agency of the United States Government,

3      operating from 70 North First Street, City of Campbell, County of Santa Clara, State of

4      California;

5    4. Defendant, Santa Clara Police Department, an agency of the United States Government,

6      operating from 600 El Camino Real, City of Sunnyvale, County of Santa Clara, State of

7      California;

8    5. Defendant, San Jose Police Department, an agency of the United States Government,

9      operating from 700 All America Way, City of Sunnyvale, County of Santa Clara, State of

10     California;

11    6. Defendants, Does 1 through 9, can only be identified by the vehicles they drove, which bore

12      these California license plate numbers:

13     • 4ZVC298, 4DNA533, 5RIS535, 5ZDX505, 5BZD520, and 4RPG034;

14     • A white Cadillac (70's), driven by Defendant, Virginia Burns, and known to park at

15      Mountain View Church of Christ, 1818 Miramonte Avenue, City of Mountain View, County

16      of Santa Clara, State of California.

17     • 3J97739, which is known to park at a residence on McDaniel Avenue, City of San Jose,

18      County of Santa Clara, State of California; and,

19     • 5RPG752, which is known to park at 1220 Tasman Drive #379, City of Sunnyvale, County of

20      Santa Clara, State of California.

21    7. Defendant, Public Safety Officer Anthony Sult, an officer of Defendant, Sunnyvale

22      Department of Public Safety, in his individual capacity and acting under color of law.

23    8. Defendants, Guadalupe Rocha, Augustine NewMoon, Gregory Herlihy, Jonathan Harrington,

PAGE 3

1    Julie Hoene, Paul Casey, Robert Bradford, Daniel Napolitan, Daniel Cortez, Jason Vo,

2    Josh Williams, Karen Williams, Billy Rome aka Billy Romeo, Leika Doe, Michael Garcia

3    Gonzales, Donnie/Lamont Doe, Ariel Doe, Kathy Bickel, Opal Schmedel, James Schmedel,

4    Kim Fisher, Jennifer Fisher, Jason Fisher, Kandis Malefyt, Long Cao, Jeannette Doe, and

5    Jack Bush

6

7                               **JURISDICTION**

8    Defendants are liable for acts of torture, committed against Plaintiff, as defined by customary

9    international law, numerous international treaties and U.S. statutes, such as the Torture Victims

10    Protection Act.

11    Accordingly, this court has jurisdiction over this action based on the Alien Tort Claims

12    Act (ATCA) and the Torture Victims Protection Act (TVPA), Title 28 U.S.C. § 1350 and Title

13    28 U.S.C. § 1331, and pursuant to interpretations given to the jurisdictional provisions of these

14    statutes by the United States Supreme Court in the recently decided case of Sosa v. Alvarez-

15    Machain (542 U.S. 692, 124 S. Ct. 2739, June 29, 2004), confirming the availability of ATCA and

16    TVPA causes of action in U.S. courts, especially where torture or violations of other universally

17    recognized international human rights standards have taken place. Plaintiff further allege that

18    the Defendants are liable for numerous acts of torture, and arbitrary arrests and detentions, that

19    took place on a consistent and ongoing basis, beginning February 2006, through and including

20    the present day, under the Alien Tort Claims Act and the Torture Victims Protection Act as cited

21    above.

22

23

## VENUE

Venue is appropriate in the United States District Court for the Northern District of California because the majority of Defendants reside in this district, and a substantial amount of the acts and omissions giving rise to this lawsuit occurred in this district; and, venue is proper in the United States District Court for the Northern District of California pursuant to Title 28 U.S.C. § 1391(d) and/or (b), and is the jurisdiction where the Defendants will be personally served with process.

## INTRADISTRICT ASSIGNMENT

This lawsuit should be assigned to the San Jose Division of this Court because a substantial part of the events or omissions, which give rise to this lawsuit, occurred in Santa Clara County.

## FIRST CLAIM FOR MONETARY AND INJUNCTIVE RELIEF

### FIRST CAUSE OF ACTION

(For Torture, Constituting Severe Pain and Suffering, under The Torture Victims Protection Act and The Alien Tort Claims Act, against all Defendants)

Plaintiff complains and alleges this cause of action pursuant to:

1. Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, G.A. Res. 39/46, 39 U.N. Doc., GAOR Supp. (No. 51) at 1100, U.N. Doc. A/39/51 (1984); and,

2. Declaration on the Protection of All Persons From Being Subjected to Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, G.A. Res. 3452, 30 U.N. Doc., GAOR Supp. (No. 34) at 91, U.N. Doc. A/10034 (1976).

1    Torture means any act, directed against an individual in the offender's custody or physical

2    control, by which severe pain or suffering (other than pain and suffering arising only from

3    or inherent in, or incidental to, lawful sanctions), whether physical or mental, is intentionally

4    inflicted on that individual for such purposes as obtaining from that individual or a third person

5    information or an confession, punishing that individual for an act that individual or a third person

6    has committed or is suspected of having committed, intimidating or coercing that individual or a

7    third person, or for any reason based on discrimination of any kind; and, mental pain or suffering

8    refers to prolonged mental harm caused by or resulting from the following:

9    • intentional infliction or threatened infliction of severe physical pain or suffering;

10    • administration or application, or threatened administration or application, of mind-altering

11    substances or other procedures calculated to disrupt profoundly the sense or the personality;

12    • threat of imminent death; or,

13    • threat that another individual will imminently be subjected to death, severe physical pain

14    or suffering, or the administration or application of mind altering substances or other

15    procedures calculated to disrupt profoundly the senses or personality.

16    Defendants, Sunnyvale Department of Public Safety, Santa Clara Police Department,

17    Campbell Police Department, and San Jose Police Department, and their agents, officers and

18    employees, and Defendants, Guadalupe Rocha, Augustine NewMoon, Gregory Herlihy, Jonathan

19    Harrington, Julie Hoene, Paul Casey, Robert Bradford, Daniel Napolitan, Daniel Cortez, Jason

20    Vo, and Virginia Burns, organized and supervised a campaign of torture against Plaintiff with

21    the purpose of 1) aggravating and accelerating the progress of terminal illness; and, 2) causing

22    new and/or aggravating existing mental illnesses.

23    Plaintiff in this case was subjected to specific incidents of torture at the hands of the

PAGE 6

1  defendants in connection with the violations of Title 42 U.S.C. § 1983 alleged in this complaint;

2  namely:

3  1.  Physical and sexual assault, including, rape and exposure to extreme cold; and, deprivation

4  of humane conditions, including, deprivation of food, sleep deprivation, and withholding of

5  medical care; and,

6  2.  Psychological torture, including, verbal abuse, threats, and false accusations; and, sensory

7  over-stimulation, including, forced and surreptitious ingestion of drugs, and exposure to

8  constant noise and voices.

9  On July 8th, 2006, Defendant, Joshua Williams, in a conversation with Plaintiff, declared his

10  knowledge about Plaintiff's exposure to constant voices, accordingly:

11  PLAINTIFF:    Okay! So, they were using tactics to try and get me to kill myself. So, what

12  tactics were they using to try and get me to kill myself?

13  DEFENDANT:  Voices.

14  PLAINTIFF:    The voices.

15  DEFENDANT:  When people hear voices and no one else around you does...

16  PLAINTIFF:    Uh-huh...

17  DEFENDANT:  That's scary, man!

18  PLAINTIFF:    Yeah!

19  DEFENDANT:  It's scary!

20  PLAINTIFF:    Yes, I know!

21  DEFENDANT:  You know what I'm saying?

22  PLAINTIFF:    Oh, that's alright. Um, we can...so, what...the voices...they were pretty scary.

23  So, they figured out that the voices would be really scary for me. And,

| | | |
|---|---|---|
| 1 | | everybody could hear them, they were just acting like they couldn't, right? |
| 2 | DEFENDANT: | No. You know what happened? |
| 3 | PLAINTIFF: | That's the reason why I could tape record...no? Okay, go ahead: "no, no, no," |
| 4 | | what? |
| 5 | DEFENDANT: | The people...the people that you're really dealing with [inaudible]. |
| 6 | PLAINTIFF: | Alright. So, they did special techniques to make it to where it's either |
| 7 | | directed at you or you'd have to be kind of trained to hear the certain, |
| 8 | | you know, pitch and that kind of stuff. If I isolate it with that software, |
| 9 | | other people will be able to hear it, right? Could you hear anything out of, |
| 10 | | yesterday...out of that stuff? |
| 11 | DEFENDANT: | I didn't hear anything. |
| 12 | PLAINTIFF: | Okay. So, then, what other techniques? |
| 13 | DEFENDANT: | [inaudible] |
| 14 | PLAINTIFF: | Who...who was involved in these voices? Who was involved? ... So, basically, |
| 15 | | they...who was involved? Who...who...who was doing the voices? |
| 16 | DEFENDANT: | [I] can't tell you all that right now. |
| 17 | PLAINTIFF: | Okay, so what else...what else...is there more to...first of all, is there more |
| 18 | | information I need to know about the voices or [inaudible] or do we need to |
| 19 | | move on to the next tactic? |
| 20 | DEFENDANT: | No. 'Cause you know why? Because that's not a fucking problem anymore. |
| 21 | PLAINTIFF: | Okay. So, let's move on to the next tactic. |
| 22 | DEFENDANT: | And... |
| 23 | PLAINTIFF: | That's why I'm asking you to tell me this information because it's not |

| | | |
|---|---|---|
| 1 | | something I can prove. So, it's not like I...knowing their names would even |
| 2 | | matter. You know what I'm saying? But, forget the names. Is there anything |
| 3 | | else about the voices I need to know? Where would they put...where were |
| 4 | | they...was it only people or was it also electronic equipment? Were they |
| 5 | | doing it, like, from vans? Like that...? |
| 6 | DEFENDANT: | No. No. |
| 7 | PLAINTIFF: | They were doing it from underneath the house or in...doing it under...were |
| 8 | | they doing it in the sewers? |
| 9 | DEFENDANT: | No? They were never down there, ever? Okay. Um. Okay, what else? What |
| 10 | | other tactics besides the voices? See, I knew... I knew... |
| 11 | DEFENDANT: | They were trying to get you to think that there's always someone there. |
| 12 | PLAINTIFF: | Mm-hm... |
| 13 | DEFENDANT: | You know? |
| 14 | PLAINTIFF: | 'Cuz there was someone else there. |
| 15 | DEFENDANT: | Exactly! |
| 16 | PLAINTIFF: | So...So, this whole paranoia thing, wasn't...was, you know, was justifiable |
| 17 | | paranoia, basically? |
| 18 | DEFENDANT: | Mm-hm. |
| 19 | PLAINTIFF: | Okay. So, okay, I've got another question here... How long have they been |
| 20 | | doing these voices? Ever since they came, right? They came in back in |
| 21 | | [February]... |
| 22 | DEFENDANT: | [nods head] |
| 23 | PLAINTIFF: | And, then ever since then? |

PAGE 9

| | | |
|---|---|---|
| 1 | DEFENDANT: | Ever since, um, two or three weeks before my people found out what was |
| 2 | | going on and sent me, fucking... |
| 3 | PLAINTIFF: | When was that? When was that? I mean, how long would you say that |
| 4 | | they've been doing that? Just so I know what are my voices and what are... |
| 5 | DEFENDANT: | James! You're doing it... |
| 6 | PLAINTIFF: | Okay. A week? Two weeks? |
| 7 | DEFENDANT: | No, no. Since, like, two weeks before I got here. |
| 8 | PLAINTIFF: | Okay... |
| 9 | DEFENDANT: | ...they've been doing that. |
| 10 | PLAINTIFF: | That's what I've... |
| 11 | DEFENDANT: | [inaudible] |
| 12 | PLAINTIFF: | So, what other tactics besides the voices and the tapping on the windows and |
| 13 | | shit that they used...that would drive me to suicide? |
| 14 | DEFENDANT: | That...those tactics right there... |
| 15 | PLAINTIFF: | Okay, so... |
| 16 | DEFENDANT: | I've...I've seen it... |
| 17 | PLAINTIFF: | They've done this before? |
| 18 | DEFENDANT: | Yes, they have. |
| 19 | PLAINTIFF: | To who[m]? Jon has? Jon has actually driven people to suicide before? |
| 20 | DEFENDANT: | Mm-hm. |
| 21 | PLAINTIFF: | Let me tell you something I overheard him talking about...I told you about |
| 22 | | one of the phone calls I heard him on one time long, long ago where he was |
| 23 | | saying that he would...that "James [would] kill himself in two days, don't |

PAGE 10

1    worry," because he was gonna...they were gonna kill me?

2    DEFENDANT:  [inaudible]

3    PLAINTIFF:   Okay, because I...I didn't hear what he said. He said, "Don't worry about it!

4    He'll kill himself in probably two days!" or something like that—"less than

5    24 or 48 hours" or something like that. And, [I] didn't... That's what they

6    were trying to do; but, I didn't realize that they would take it this far. Um,

7    so, uh, the only tactic they used was the voices and the "ever-present" thing...

8    and they would stop around family and friends, right? I mean, they wouldn't

9    do this around family and friends. Did they try to drive a wedge between me

10   and my family and friends and stuff like that? Did they ever try to do any

11   other techniques besides the talking and the voices and the other shit?

12   DEFENDANT:  [stutters] Little things.

13   PLAINTIFF:   Like?

14   DEFENDANT:  Like, they, like, it was like they, it's...it's... [laughs]

15   PLAINTIFF:   Yeah, I know; but I mean, like what?

16   DEFENDANT:  Yeah, they...they would try and drive friends away and, like, not have people

17   come in here.

18   PLAINTIFF:   What was the real reason they were driving realtors away from my home?

19   Because, it wasn't [because they wanted] a place to stay; because, they knew

20   I wouldn't have a place to stay if they weren't helping to pay for the place.

21   DEFENDANT:  Because what they were, what they were planning on doing and haven't done

22   and...

23   PLAINTIFF:   What are they planning on doing?

| | | |
|---|---|---|
| 1 | DEFENDANT: | They were trying to [get you to] fucking kill yourself or they were gonna |
| 2 | | kill... |
| 3 | PLAINTIFF: | Ah! Okay. |
| 4 | DEFENDANT: | If it didn't happen within a period of time, then they would eventually do it. |
| 5 | PLAINTIFF: | If I had not killed myself within a certain amount of time, they were going |
| 6 | | to... |
| 7 | DEFENDANT: | Not a certain amount of time. |
| 8 | PLAINTIFF: | But, eventually? |
| 9 | DEFENDANT: | Eventually, yeah. |

10    These acts of torture, abuses and injuries suffered by the Plaintiff designated in this First

11    Cause of Action, including severe physical and mental injury, such as, difficulty concentrating,

12    nightmares, insomnia, memory loss, fatigue, anxiety, depression, and posttraumatic stress

13    disorder (anxiety, nervousness, depression, lack of confidence, helpless feeling, humiliation,

14    headaches, teeth-grinding, nightmares, sleeplessness, and panic attacks), and the physical and

15    mental suffering associated therewith, were inflicted upon him by, and/or at the instigation

16    or with the complicity, consent or acquiescence, and under the control and authority of the

17    Defendants, acting under color of law and in their official capacities, albeit through unlawful and

18    unauthorized actions on their part, carried out for unlawful and unauthorized purposes.

19    These acts caused direct and severe physical and mental pain and suffering upon the

20    Plaintiff, and placed him at severe risk or personal injury and/or death in connection with their

21    participation in, and support of, the peaceful exercise of the rights guaranteed him by law.

22    These acts of torture were inflicted deliberately and intentionally by the defendants for

23    purposes that include, among others, preventing or punishing the Plaintiff for the exercise of his

1    rights to pursue legal remedy for crimes committed against him.

2    The acts described herein constitute torture in violation of the Torture Victims Protection

3    Act (TVPA), Pub. L. No. 102-256, 106 Stat. 73 (1992) (codified at Title 28 U.S.C. § 1350), and

4    constitute "tort[s] ... committed in violation of the law of nations or a treaty of the United States"

5    under the Alien Tort Claims Act, Title 28 U.S.C. § 1350, in that the acts violated provisions in

6    a number of treaties binding on the United States prohibiting torture on an absolute basis, as

7    defined, reflected and expressed in those treaties and other instruments, in statutory provisions

8    adopted by the Congress of the United States implementing those treaty obligations, and as

9    further reflected in administrative regulations and in international and domestic judicial decisions

10    applying and interpreting the prohibition against torture. These acts also constitute torture under

11    customary international law.

12    In every case, Plaintiff was the only apparent target; consequently, Plaintiff is the only

13    injured party.

14    To the Plaintiff's knowledge and belief, the aforementioned defendants were directly

15    responsible for the acts of torture, and are thereby responsible for the damages suffered by the

16    Plaintiff, as a result.

17    Defendants, Josh Williams, Karen Williams, Billy Rome aka Billy Romeo, Leika Doe,

18    Michael Garcia Gonzales, Donnie/Lamont Doe, Ariel Doe, Kathy Bickel, Opal Schmedel, James

19    Schmedel, Kim Fisher, Jennifer Fisher, Jason Fisher, Kandis Malefyt, Public Safety Officer

20    Anthony Sult, and Jack Bush, had prior knowledge of the acts of torture alleged herein; but, did

21    not take action to prevent it or to apprehend the perpetrators when they had an opportunity and

22    responsibility to do so, and may have played an even more direct role in planning and facilitating

23    these acts of torture and other major human rights abuses.

1        Defendant Sult implied his awareness of Plaintiff's exposure to the "voices" form of torture

2    in a conversation with Plaintiff on August 5th, 2006, at 1:27 PM:

3    PLAINTIFF:    I gave the DVD to, um, I think it was Marsha or somebody at the front desk

4        and just said, you know, "This is for Officer Sult." And, told 'em, you know,

5        vaguely, or, you know, basically, what it was about; and, they said they

6        would get it to you. This is actually before we had met.

7    DEFENDANT:    Oh, okay. Yes, because I...I [sighs] I don't actually remember ever seeing

8        it; but, I do remember getting a report back from it because I'm not the one

9        who has all the listening devices and everything put into...anyways! But, I

10        definitely... I'll ask around and if track it down, I will definitely give you a

11        call.

12        Plaintiff referred to a prenatal monitor given to him by Defendant, Jeannette Doe, for

13    the purpose of listening for trespassers, who were known to enter the crawlspace underneath

14    Plaintiff's home, which Plaintiff referred to as a "listening device."

15        Defendant, Long Cao, took a number of actions that contributed to the major human rights

16    abuses that took place, which began on February 23rd, 2006, and continue until this day. He was

17    present at the time; and, apparently, his purpose was to prevent and interfere with discovery of

18    the acts of torture, and to prevent efforts by the Plaintiff to seek and find remedy and relief.

19        Defendants, Does 1 to 9, not only had advance notice of the acts of torture; but, also played

20    a direct role in arranging for them to take place by contracting with the perpetrators to carry out

21    their unlawful mission. The actions by these defendants before, during and immediately after

22    the acts of torture, confirm their direct involvement in and responsibility for the violations of

23    international law that took place during this time period.

1    Defendants, Does 1 to 9, also played an important role in the assaults and human rights

2    abuses that took place during this time period. Although that action does not in and of itself

3    indicate involvement in the acts of torture, subsequent actions suggest an active role in the plot.

4    Given the involvement of these defendants in the acts of torture, the withdrawal and absence

5    of Defendant, Federal Bureau of Investigation, has to be considered an important element in

6    the aforementioned acts, and a clear indication of the fact that they had prior knowledge of, and

7    involvement in, the plot.

8    Defendant, Federal Bureau of Investigation, played a major role in covering up involvement

9    by the remaining defendants, by failing to properly investigate the assaults, or to prosecute the

10   perpetrators. Consistent with this cover-up approach, officials of Defendants, Federal Bureau

11   of Investigation and United States Secret Service, also did not even investigate Plaintiff's

12   complaints, which are unrelated to this cause of action (e.g., Defendant, Secret Service Agent

13   Brian Williamson, refused to investigate credible reports of fraud, various identity theft crimes,

14   forgery, and money laundering, in connection with the loss of Plaintiff's home and the proceeds

15   from its sale).

16   To this day, none of those suspected of perpetrating the assaults have been charged, arrested

17   or prosecuted by any law enforcement agency, despite the fact that the identity of some of the

18   perpetrators are well known, in part because of the investigative efforts of the Plaintiff. The

19   Federal Bureau of Investigation and the Department of Justice, of which it is part, has therefore

20   played a major role in the cover-up in their refusal or inability to act to prevent and punish the

21   major human rights abuses that took place.

22   The identity of the unknown defendants, who played a role in the acts of torture, will be

23   determined and specified during the course of the proceeding.

1    Defendants, Federal Bureau of Investigation, individually and collectively, actively

2    participated in the planning and carrying out, and/or were otherwise aware of, acquiesced in,

3    or acted to cover up, and did not act to prevent or punish, these violations of human rights as

4    embodied in international and domestic law. These violations and actions meet the definition

5    of torture under the meaning of the TVPA, the ATCA, and international treaties and U.S. laws

6    and regulations prohibiting such acts of torture, wherever they are committed, and for whatever

7    reason they are committed, on an absolute and universally condemned basis.

8    There are strong indications that city, county, state and/or federal law enforcement agencies

9    plan to take additional arbitrary and extrajudicial punitive actions, including possible life

10    threatening action, against Plaintiff by unjust and improper means of incarceration and by

11    subjecting him to an arbitrary summons to appear before a court and detention to prevent and

12    penalize his pursuit of legal remedy via this lawsuit.

13    Accordingly, Plaintiff seeks injunctive relief, against Defendants, City of San Jose and San

14    Jose Police Department, barring any actions until reviewed and ordered by the presiding judge in

15    this case.

16

17    **SECOND CAUSE OF ACTION**

18    (For Other Crimes Against Humanity)

19    Plaintiff re-alleges and incorporates by reference the facts and allegations set forth in the First

20    Cause of Action of this complaint as if fully set forth herein in this Second Cause of Action.

21    The acts of abuse and injury and violations of international law suffered by the Plaintiff that

22    included torture and other major human rights violations inflicted upon them by the defendants

23    named herein are generally recognized to constitute crimes against humanity per international

1    law, and are considered to be part of *jus cogens* standards of international law that are universally

2    recognized and enforced by the international community.

3        This is a civil action for compensatory, punitive and exemplary damages, and for other relief,

4    including a declaratory judgment, for torts committed in violation of domestic law, specifically

5    for abuses that constitute torture, pursuant to Title 28 U.S.C. § 1331 (Torture Victims Protection

6    Act), authorizing the filing of damage claims against torturers for acts of torture.

7        Plaintiff in this action was subjected to torture, as a result of unlawful actions taken

8    under color of law by Defendants, Sunnyvale Department of Public Safety, Santa Clara Police

9    Department, Campbell Police Department, and San Jose Police Department, and the other

10   Defendants, [list], that were carried out with the involvement, approval and support of all named

11   and unnamed Defendants.

12       Plaintiff investigated and, subsequently, confirmed, responsibility for, and involvement in,

13   the aforementioned act of torture by Defendants. Moreover, these acts were part of a larger,

14   ongoing effort that Defendants, Sunnyvale Department of Public Safety, Santa Clara Police

15   Department, Campbell Police Department, and San Jose Police Department, have been engaged

16   in for a number of years prior and subsequent to February 23rd, 2006, and that continue to the

17   present day, involving a consistent pattern and practice of major human rights abuses, including

18   torture, with the expressed intent of punishing and repressing individuals considered enemies of

19   these Defendants or those they deem undesirable by society (e.g., based on HIV/AIDS status and

20   sexual orientation).

21       Plaintiff alleges and can prove, using, in part, witness testimony and medical evaluation

22   reports, and other findings of fact, that Defendants, Sunnyvale Department of Public Safety and

23   Santa Clara Police Department, Campbell Police Department, and San Jose Police Department,

1    acting under color of law, though outside of their official mandate and lawful authority, exercised

2    command responsibility over, conspired with, aided and abetted, and supervised the actions

3    of its' agents directly under their authority and control who arranged for, carried out, and/or

4    permitted the carrying out of the acts of torture that form the basis for this complaint.

5    Defendants conspired with each other in carrying out and covering up these abuses and

6    violations described herein.

7    Accordingly, pursuant to specific statutory provisions adopted by Congress with these types

8    of abuses specifically in mind; notably, the Torture Victims Protection Act (Public Law Number

9    102-256, 106 Stat. 73 (1992) codified as Title 28 U.S.C. § 1350), the Alien Tort Claims Act (Title

10    28 U.S.C. § 1350); and, the statutes implementing the absolute prohibition against acts of torture

11    contained in the Convention Against Torture; and, the American Declaration of the Rights

12    and Duties of Man; and, other pertinent declarations, documents and practices constituting the

13    customary international law of human rights and the law of nations, as well as Title 28 U.S.C.

14    § 1350, Article II, Section 2 and the Supremacy Clause of the Constitution of the United States.

15    (140)

16    Defendants, Sunnyvale Department of Public Safety, Santa Clara Police Department,

17    Campbell Police Department, and San Jose Police Department, and named and unnamed agents

18    in their employ, and all other defendants, are liable under both international and domestic law for

19    the injuries, pain and suffering and other damages experienced by the plaintiff.

20

21    **RELIEF REQUESTED**

22    WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

23    a.   For a declaratory judgment determining that the actions of the Defendants constituted

1    violations of international law, specifically prohibited acts of torture in violation of the

2    Convention Against Torture, numerous other international treaty obligations binding on the

3    United States, and domestic laws and regulations implementing such standards, including the

4    Torture Victims Protection Act.

5    b.    For compensatory damages to each of the Plaintiff, according to proof to be established at

6         trial;

7    c.    For punitive and exemplary damages according to proof to be established at trial;

8    d.    For reasonable attorney's fees and costs associated with the litigation, according to proof;

9         and,

10   e.    For such other and further relief as the Court may deem just and proper.

11

12                **SECOND CLAIM FOR MONETARY AND INJUNCTIVE RELIEF**

13                          **FIRST CAUSE OF ACTION**

14                   (For Improper Civil Commitment, Assault and Battery,

15               False Imprisonment, Conspiracy to Interfere with Civil Rights,

16                  Medical Malpractice, and Misprision of Felony against

17                 Valley Medical Center: Emergency Psychiatric Services and

18                  St. Helena Hospital Center for Behavioral Health)

19   Plaintiff in this Second Claim for Monetary Relief asserts that the forcible administration of

20   antipsychotic medication, by injection, in the absence of informed consent and an explanation of

21   any foreseeable risks or side effects associated with his medication regimen, violated his rights to

22   make an informed treatment decision, and constituted assault and battery.

23   Plaintiff further asserts that the administration of additional medication, when it was

1    unnecessary and unwanted, violated the Plaintiff's rights to bodily integrity and personal

2    security protected by the California State Constitution and the United States Constitution, and

3    also violated various state statutes and regulations.

4        Plaintiff also asserts that he was restrained when he did not pose a risk of injuring himself

5    or others, and was deprived of his right to liberty as guaranteed by the Fourteenth Amendment

6    to the United States Constitution. This restraint also violated state statutes and regulations, and

7    constituted assault and battery.

8        This civil rights action has arisen from the emergency psychiatric hospitalization of James

9    Alan Bush, Plaintiff, at Valley Medical Center: Emergency Psychiatric Services, a facility owned

10    and operated by the State of California, and St. Helena Hospital Center for Behavioral Health,

11    between August 19th, 2006, and August ___, 2006.

12        Plaintiff believes that Defendants in this action wrongfully confined him, and that these

13    defendants violated his constitutional rights to liberty and due process when they authorized

14    Plaintiff's hospitalization when Plaintiff did not pose a danger to himself or others. Moreover,

15    the defendants entered into an agreement to deny Plaintiff due process by fraudulently

16    misrepresenting his statements, obstructing justice thereby, which is cognizable under 42 U.S.C.

17    § 1983 and 42 U.S.C. § 1985(3), to cover up predicate acts by Defendants, [list], committing

18    misprision of felony thereby, which is cognizable under Title 18 U.S.C. § 4. [U.S. v. Ciambrone,

19    C.A. Nev., 750 F.2d 1416, 1417]

20        Plaintiff seeks (1) injunctive relief, directing that Plaintiff's hospital records be expunged;

21    and, (2) compensatory and punitive damages against the defendants.

22

23

PAGE 20

## PARTIES

1.  Defendant, Kathy Bickel, is a defendant for purposes of Title 42 U.S.C.A. § 1983, is being sued as a private individual and as a state actor, and is liable for civil rights violations against Plaintiff under color of law. [Cruz v. Donnelly, 727 F.2d 79, 82 (3d Cir. 1984) Id., 727 F.2d 79, 80; Adickes v. S. H. Kress & Co., 398 U.S. 144, 152, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); Coggins v. Carpenter, 468 F. Supp. 270, 282, (E.D. Pa. 1979); U.S. v. Price, 383 U.S. 787, 794, 86 S. Ct. 1152, 16 L. Ed. 2d 267 (1966); Fine v. City of New York, 529 F.2d 70, 75 (2d Cir. 1975). U.S. v. Classic, 313 U.S. 299, 326, 61 S. Ct. 1031, 85 L. Ed. 1368 (1941); Jones v. Eagleville Hosp. and Rehabilitation Center, 588 F. Supp. 53, 56 (E.D. Pa. 1984)]

2.  Defendant, [officer], is a police officer, employed by the Sunnyvale Department of Public Safety, and is sued acting as a state actor and a private individual.

3.  Defendant, Sunnyvale Department of Public Safety, is an agency of the United States government, operating from 700 All America Way, City of Sunnyvale, County of Santa Clara, State of California, and is vicariously liable for the conduct of its officers under the doctrine of respondeat superior.

4.  Defendant, [officer], is a police officer, employed by the Campbell Police Department, and is being sued as both a state actor and a private individual.

5.  Defendant, [officer], is a police officer, employed by the Campbell Police Department, and is being sued as both a state actor and a private individual.

6.  Defendant, Campbell Police Department, is an agency of the United States government, operating from 70 North First Street, City of Campbell, County of Santa Clara, State of California, and is vicariously liable for the conduct of its officers under the doctrine of *respondeat superior.*

7.  Defendant, Doe 10, is a medical doctor, and, at all relevant times and events herein, practiced psychiatry at Valley Medical Center: Emergency Psychiatric Services.

8.  Defendant, Valley Medical Center: Emergency Psychiatric Services, is a medical facility, owned and operated by the County of Santa Clara, operating from 820 Enborg Court, City of San Jose, County of Santa Clara, State of California.

9.  Defendant, Dr. Surrender Punia, M.D., is a medical doctor, and, at all relevant times and events herein, practiced psychiatry at St. Helena Hospital: Center for Behavioral Health.

10. Defendant, St. Helena Hospital: Center for Behavioral Health, is a medical facility, operating from 525 Oregon Street, City of Vallejo, County of Solano, State of California.

## JURISDICTION AND VENUE

Jurisdiction is conferred upon this court pursuant to Title 28 U.S.C.A. § 1331, which authorizes original jurisdiction on the district court of all civil actions arising under the Constitution, laws and treaties of the United States.

Jurisdiction is conferred upon this court pursuant to Title 28 U.S.C.A. § 1339, which grants original jurisdiction to the district court of any civil actions arising under an Act of Congress relating to the Postal Service.

Jurisdiction is also conferred upon this court pursuant to Title 28 U.S.C.A. § 1343(c)(4), which grants jurisdiction to the district court of any action to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

Jurisdiction also exists pursuant to Title U.S.C.A. § 1367(a), which authorizes jurisdiction over state law claims that one so related to the other claims in this lawsuit that they form part of the same case and controversy.

1    Venue is proper pursuant to Title 28 U.S.C.A. § 1391(e), which authorizes that a civil action

2    may be brought in a judicial district in which a substantial part of the vents or commissions

3    giving rise to the claim of unlawful civil commitment occurred. Plaintiff resides in Santa Clara

4    County. Plaintiff was hospitalized, first, in Santa Clara County; secondly, in Solano County.

5

6                              **FACTUAL ALLEGATIONS**

7    On August 19th, 2006, Plaintiff, who had been the victim of numerous crimes on a continual

8    basis for over five months, was accosted at his home.

9    Plaintiff fled from his home and called emergency services (i.e., 911) to report criminal

10    activity, to which Defendants, [officers], Campbell Police Department, responded.

11    Plaintiff met with Defendants, [officers], and reported the incident, and briefly recounted

12    some of the events over the past five months.

13    Upon hearing the Plaintiff's story, Defendant, [officer], suggested that the one might consider

14    suicide as a result of the experiences described by the Plaintiff, to which the Plaintiff responded

15    with laughter: "Well, who wouldn't?"

16    Defendant, [officer], then offered to transport the Plaintiff to the Campbell Police Station to

17    obtain more information and file a report, to which the Plaintiff agreed; however, Defendant,

18    [officer], then handcuffed the Plaintiff and transported him to Valley Medical Center: Emergency

19    Psychiatric Services.

20    Defendants, Valley Medical Center: Emergency Psychiatric Services and St. Helena Hospital

21    Center for Behavioral Health, then admitted Plaintiff on an emergency and involuntary basis.

22    Plaintiff repeatedly verbalized to Defendants, Valley Medical Center: Emergency Psychiatric

23    Services and St. Helena Hospital Center for Behavioral Health, his desire that he not be

1    admitted to Valley Medical Center; Emergency Psychiatric Services and St. Helena Hospital

2    Center for Behavioral Health, and the aforementioned defendant denied Plaintiff's request for

3    the medical basis for the involuntary commitment. Accordingly, Plaintiff brings this action for

4    damages against Defendants, Doe 10 and Dr. Surrender Punia, M.D., as set forth in O'Connor

5    v. Donaldson (1975) 422 U.S. 563, 573 n.8, 95 S. Ct. 2486, 45 L. Ed. 2d 396, for negligent

6    misdiagnosis by a Psychiatrist or Psychologist.

7        Defendant, Valley Medical Center: Emergency Psychiatric Services and St. Helena Hospital

8    Center for Behavioral Health, failed to reach a determination required by California law when

9    authorizing Plaintiff's continued confinement.

10        California law provides that a person may be hospitalized, on an emergency basis, if he is

11    alleged to have a mental illnesses for which immediate observation, care, and treatment in a

12    hospital is appropriate and which is likely to result in serious harm to himself or others.

13        At the time of his admission to Valley Medical Center: Emergency Psychiatric Services and

14    St. Helena Hospital Center for Behavioral Health, Plaintiff did not satisfy either of these criteria.

15        Defendants, Valley Medical Center: Emergency Psychiatric Services and St. Helena Hospital

16    Center for Behavioral Health, upon information and belief, found merely that Plaintiff had

17    jokingly stated that any person who has been the repeated target of crime would consider suicide

18    in absence of reprieve and rescue.

19        The statement made by the Plaintiff, in the context in which it was made, did not amount to

20    the desire to hurt himself or others; furthermore, Defendants, Doe 10, Valley Medical Center:

21    Emergency Psychiatric Services, Dr. Surrender Punia, and St. Helena Hospital Center for

22    Behavioral Health, negligently and/or intentionally misinterpreted Plaintiff's fear, anxiety, grief

23    and agony due to near constant, five-month long victimization as paranoia and psychosis.

PAGE 24

1    While hospitalized at Valley Medical Center: Emergency Psychiatric Services and St. Helena

2  Hospital Center for Behavioral Health, Plaintiff repeatedly expressed to hospital staff his desire

3  to be released.

4    Plaintiff had never been admitted to a psychiatric facility before August 19th, 2006.

5    Upon information and belief, Defendants, Valley Medical Center: Emergency Psychiatric

6  Services and St. Helena Hospital Center for Behavioral Health, in and through its operation of

7  their respective facilities, maintain a policy or practice of failing to comply with the requirements

8  of California law when hospitalizing patients pursuant to that statutory provision.

9

10                    **FIRST CAUSE OF ACTION**

11    By authorizing Plaintiff's involuntary confinement pursuant to California law absent a

12  determination that he threatened suicide or manifested any suicidal, homicidal, or other violent

13  behavior, and did not pose a danger to himself or others as a result of mental illness, Defendants,

14  Campbell Police Department, Valley Medical Center: Emergency Psychiatric Services and

15  St. Helena Hospital Center for Behavioral Health, (1) violated California law and Plaintiff's

16  right to procedural due process of law under the Fourteenth Amendment of the United States

17  Constitution, and further violated Title 42 U.S.C. § 1983, and (2) violated Plaintiff's rights under

18  the substantive component of the due process clause of the Fourteenth Amendment of the United

19  States Constitution, and further violated Title 42 U.S.C. § 1983.

20

21

22

23

## SECOND CAUSE OF ACTION

Plaintiff alleges that Defendants, [officers], Campbell Police Department, engaged in a

pre-arranged action with Defendants, Valley Medical Center: Emergency Psychiatric Services

and St. Helena Hospital Center for Behavioral Health, to hospitalize the Plaintiff to cover up

the predicate acts of the other defendants named in this complaint, constituting a conspiracy to

interfere with Plaintiff's civil rights, cognizable under Title 42 U.S.C. § 1985, and misprision of

felony thereby, cognizable under Title 18 U.S.C. § 4. [United States v. Perlstein, C.C.A.N.J., 126

F.2d 789, 798; U.S. v. Ciambrone, C.A.Nev., 750 F.2d 1416, 1417]


## THIRD CAUSE OF ACTION

By placing the Plaintiff in a physical restraint when it was not absolutely necessary to protect

himself or others from injury, Defendants, [officers], and Campbell Police Department, violated

the following rights, which Plaintiff did possess:

a.  The right to liberty and the right to remain free from physical restraints when such restraint

is not necessary to prevent injury to self or others under the California Constitution and the

Fourteenth Amendment to the United States Constitution, which also amounts further to a

violation of Title 42 U.S.C. § 1983;

b.  The right to remain free from assault and battery [Restatement 2d, Torts §21];


## FOURTH CAUSE OF ACTION

By prescribing intramuscular injections of an unknown medication for the Plaintiff and

failing to insure that staff did not coerce the Plaintiff into accepting the medication, which

resulted in staff forcibly injecting the Plaintiff, Defendants, Valley Medical Center: Emergency

1   Psychiatric Services and St. Helena Hospital Center for Behavioral Health, violated the following

2   rights, which Plaintiff did possess:

3   a.  The right to refuse medication and the right to object to treatment under the California

4       Constitution;

5   b.  The right to refuse unwanted medication under the Fourteenth Amendment to the United

6       States Constitution, which also amounts further to a violation of Title 42 U.S.C. § 1983; and,

7   c.  The right to remain free from assault and battery [Restatement 2d, Torts §21];

8

9                            **FIFTH CAUSE OF ACTION**

10      By prescribing intramuscular injections for and failing to inform the Plaintiff of any

11  alternatives to this treatment, or of any foreseeable risks or side effects associated with

12  his treatment, and by failing to inform the Plaintiff of his option to reject the medication,

13  Defendants, Valley Medical Center: Emergency Psychiatric Services and St. Helena Hospital

14  Center for Behavioral Health, violated the following rights, which Plaintiff did possess under

15  California Public Health Law:

16  a.  The right to an explanation of proposed medical procedures and courses of treatment; and,

17  b.  The right to a disclosure of alternatives to invasive therapy, and any foreseeable risks to the

18      proposed treatment.

19

20                           **SIXTH CAUSE OF ACTION**

21      Defendants, Valley Medical Center: Emergency Psychiatric Services and St. Helena Hospital:

22  Center for Behavioral Health, subjected Plaintiff to reprisal and harassment, both directly and

23  indirectly, by taking action to prevent him from reporting or otherwise bringing to the agency's

1  attention facts and information of violations of Plaintiff's rights, by recruiting current and former

2  employees to engage in the allegations made herein, constituting retaliation cognizable under

3  Welf. & Inst. Code § 4905(a).

4

5                                          **JOINT AND SEVERAL LIABILITY**

6           As set forth herein, all Defendants are joint tortfeasors engaged in a common plan and

7  scheme, and, thus, all are jointly and severally liable for all damages suffered by Plaintiff herein.

8

9                                               **JURY TRIAL DEMAND**

10          Plaintiff is entitled to and demands a trial by jury on all issues.

11

12                                              **RELIEF REQUESTED**

13          WHEREFORE, Plaintiff requests the following relief:

14      a.  judgment against the defendants, acting in their personal capacities, awarding compensatory

15          damages to the Plaintiff in the amount of $7,500,000, and punitive damages to the Plaintiff in

16          the amount of $5,000,000;

17      b.  punitive damages in the amount of $12,500,000;

18      c.  injunctive relief directing the expungement of Plaintiff's hospital records immediately;

19      d.  a declaration that Plaintiff is not required to pay care and treatment charges assessed as a

20          result of his involuntary hospitalization;

21      e.  attorney fees pursuant to Title 42 U.S.C. § 1988;

22      f.  costs and disbursements; and,

23      g.  any other relief that this court deems just and proper.

1

2

3

4    Respectfully submitted this

5    10th day of March, 2008, by

6    _____

7    James Alan Bush

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| James Alan Bush | Sunnyvale Dept. of Public Safety, et. al |

| (b) County of Residence of First Listed Plaintiff  Santa Clara<br>(EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant     Santa Clara<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE<br>LAND INVOLVED. |
|---|---|
| (c) Attorney's (Firm Name, Address, and Telephone Number)<br><br>James Alan Bush<br>1745 De Marietta Avenue #3<br>San Jose, CA 95126<br>(408) 982-3272 | Attorneys (If Known)<br><br>Sunnyvale Office of the City Attorney<br>456 West Olive Avenue<br>Telephone (408) 730-7464<br>FAX: (408) 730-7468 |

ADR       C08   01354   RS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [X] 3  Federal Question (U.S. Government Not a Party)
- [ ] 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Med. Malpractice | [ ] 625 Drug Related Seizure | 28 USC 157 | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | Liability | [ ] 365 Personal Injury— | of Property 21 USC 881 | | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 460 Deportation |
| & Enforcement of Judgment | Slander | [ ] 368 Asbestos Personal | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 470 Racketeer Influenced and |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Injury Product | [ ] 650 Airline Regs. | [ ] 830 Patent | Corrupt Organizations |
| [ ] 152 Recovery of Defaulted | Liability | Liability | [ ] 660 Occupational | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| Student Loans | [ ] 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | [ ] 490 Cable/Sat TV |
| (Excl. Veterans) | [ ] 345 Marine Product | [ ] 370 Other Fraud | [ ] 690 Other | | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment | Liability | [ ] 371 Truth in Lending | | **SOCIAL SECURITY** | [ ] 850 Securities/Commodities/ |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 380 Other Personal | **LABOR** | [ ] 861 HIA (1395ff) | Exchange |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | Property Damage | [ ] 710 Fair Labor Standards | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge |
| [ ] 190 Other Contract | Product Liability | [ ] 385 Property Damage | Act | [ ] 863 DIWC/DIWW 405(g)) | 12 USC 3410 |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury | Product Liability | [ ] 720 Labor/Mgmt. Relations | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise | | | [ ] 730 Labor/Mgmt.Reporting | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | | [ ] 892 Economic Stabilization Act |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate | [ ] 740 Railway Labor Act | **FEDERAL TAX SUITS** | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 442 Employment | Sentence | [ ] 790 Other Labor Litigation | [ ] 870 Taxes (U.S. Plaintiff | [ ] 894 Energy Allocation Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ | **Habeas Corpus:** | [ ] 791 Empl. Ret. Inc. | or Defendant) | [ ] 895 Freedom of Information |
| [ ] 240 Torts to Land | Accommodations | [ ] 530 General | Security Act | [ ] 871 IRS—Third Party | Act |
| [ ] 245 Tort Product Liability | [ ] 444 Welfare | [ ] 535 Death Penalty | | 26 USC 7609 | [ ] 900Appeal of Fee |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities— | [ ] 540 Mandamus & Other | **IMMIGRATION** | | Determination |
| | Employment | [ ] 550 Civil Rights | [ ] 462 Naturalization Application | | Under Equal Access |
| | [ ] 446 Amer. w/Disabilities— | [ ] 555 Prison Condition | [ ] 463 Habeas Corpus — | | to Justice |
| | Other | | Alien Detainee | | [ ] 950 Constitutionality of |
| | [X] 440 Other Civil Rights | | [ ] 465 Other Immigration | | State Statutes |
| | | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- [X] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from another district (specify)
- [ ] 6  Multidistrict Litigation
- [ ] 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Title 42 U.S.C. §§ 1983, 1985 and 1986

Brief description of cause:
Conspiracy to Deprive Plaintiff of Civil Rights (Constitutional Violations by State Actors and Private Individuals)

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 100,000,000

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE". C08 01272 and C08 00539

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

- [ ] SAN FRANCISCO/OAKLAND
- [X] SAN JOSE

SIGNATURE OF ATTORNEY OF RECORD

DATE
03-10-08